DAVID CANCEL AND NIRSA CANCEL, PLAINTIFFS, v. RICHARD WATSON, DEFENDANT AND THIRD-PARTY PLAINTIFF, v. CITIZENS STATE BANK AND LICEO CUBANO, THIRD-PARTY DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided November 19, 1974.

Mr. *Darrell Fineman* for plaintiffs (*Messrs. Kavesh & Basile,* attorneys).

Mr. *Franklin J. Riesenburger* for defendant and third-party plaintiff (*Messrs. Greenblatt & Greenblatt,* attorneys).

Mr. *Thomas M. Falkowski* for third-party defendant Citizens State Bank (*Messrs. Gurry & Conlan,* attorneys).

Mr. *John Himmelberger, Jr.* for third-party defendant Liceo Cubano (*Messrs. Horn, Weinstein & Kaplan,* attorneys).

MILLER, J. C. C., Temporarily Assigned. Defendant third-party plaintiff in this personal injury case has moved for a rehearing on the question of whether the governmental agencies here involved may be joined as third-party defendants. A prior motion by defendant to serve notice upon the governmental agencies under the New Jersey Tort Claims Act of 1972, *N. J. S. A.* 59:1-1 *et seq.,* was denied on the ground that such third-party practice should not be permitted under that act. The court is now asked to reconsider this conclusion in light of *Markey v. Scog,* 129 *N. J. Super.* 192 (Law Div. 1974).

In *Markey v. Scog* the court was faced with a similar issue to that presented in this case. The court concluded that the right of a nonpublic defendant to seek contribution from a public entity as a joint tortfeasor depended in that case upon the claim and presentation requirements of *N. J. S. A.* 59:8-8. Here the question is broader and it is the opinion of this court that while notice under *N. J. S. A.* 59:8-8 is, of course, important, the primary question is not so much compliance with the notice provisions, but whether the claims may be joined at all. For the reasons set forth hereafter, it is determined that joinder should not be permitted.

In the instant case a "slow pitch" softball game took place on June 11, 1973 at Landis Park, Vineland, in which defendant Watson was a participant. During this game it is alleged Watson hurled or caused to be hurled a baseball bat through the air, striking plaintiff. The complaint was filed against defendant Watson in November 1973. This court in January 1974 granted defendant's motion to serve third-party complaints against the YMCA of the City of Vineland, the Citizens State Bank and the Liceo Cubano, the thrust of these complaints being failure of supervision and control. However, motions to join the City of Vineland and the Vineland Recreation Commission on similar grounds were denied as improper under the Tort Claims Act of 1972. The defendant now seeks rehearing on the following question:

May the party defendant in a personal injury action file a third-party complaint for indemnification and contribution against a public entity where the party plaintiff has failed to present a claim against such public entity directly under *N. J. S. A.* 59:8-8. For the reasons enunciated herein, the answer is in the negative. At the outset the court notes that joinder should be denied in the instant case for the simple reason that the statute specifically denies liability in this type of factual situation, *N. J. S. A.* 59:3-11; 59:2-2(b).

The New Jersey Tort Claims Act of 1972, *N. J. S. A.* 59:1-1 *et seq.,* was an attempt by the Legislature to balance the inequities perpetrated through the application of sovereign immunity with the severe economic burden which total abrogation of that doctrine would impose upon public entities. Having struck what it felt to be the appropriate balance, the Legislature declared that

\* \* \* public entities shall *only* be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. *N. J. S. A.* 59:1-2. [Emphasis added]

The act, therefore, reestablished the sovereign immunity doctrine, following the decision of the Supreme Court in *Willis v. Dept. of Conservation and Economic Development,* 55 *N. J.* 534 (1970), subject only to the provisions of the act. See *Report of the Attorney General's Task Force on Sovereign Immunity* 10 (May 1972).

The procedure for the commencement and prosecution of claims against public entities is set forth in chapters 8 and 9 of the act. In light of the legislative declaration set forth in chapter 1 and quoted above, these procedures must be considered as all-inclusive. The statute does recognize that a public entity may be a joint tortfeasor and limits the extent of recovery allowable against such a public entity in *N. J. S. A.* 59:9-3. However, nowhere in the act is the commencement of third-party proceedings against a public entity exempted from the general procedures set forth therein. It

therefore appears that a party defendant may not join a public entity as a third-party defendant unless the party plaintiff has acted affirmatively against the public entity under *N. J. S. A. 59*:8–8.

In addition to this negative inference, it is clear that the Legislature intended to discourage the joinder of public entities as third-party defendants. Under the act the addition of a public entity as a third-party defendant is made to create significantly greater complications than those normally associated with the addition of third parties. Initially, *N. J. S. A. 59*:9–1 provides that *all* tort claims brought against a public entity under this act shall be tried by a judge sitting without a jury. Yet, a plaintiff in other tort actions has an absolute right to demand a jury trial. *N. J. Const.* (1947), Art. I, par. 9. Thus, the Legislature must have felt that it was for the *plaintiff alone* to decide whether, in any given case, his right to a jury trial as to *all* issues outweighs the possibility of obtaining a judgment against the public entity in some sort of bifurcated proceeding, because only the plaintiff is given the power to serve notice upon the public entity. *N. J. S. A. 59*:8–8.

A second complicating factor is created by the Legislature's choice of the so-called "Mississippi rule" of comparative negligence in *N. J. S. A. 59*:9–4 for tort actions against public entities. This rule is in conflict with the Wisconsin rule of comparative negligence selected by the Legislature to govern in tort actions against private entities, *N. J. S. A. 2A*:15–5.1. The incompatability of these two rules, especially in light of the fact that they were enacted within a year of each other, can only be construed as indicating a legislative bias against joinder of tort claims against public and private entities. Only where a party plaintiff affirmatively assumes the risk of so complicating his proceeding by direct action against the public entity under *N. J. S. A. 59*:8–8 will the burdens of such complications be imposed upon him.

Further manifestations of the Legislature's bias against joinder of public entities in otherwise private litigation ap-

pear in the provisions of *N. J. S. A.* 59:9–2. Under this section the Legislature proscribes recovery based on strict liability, implied warranty or products liability, recovery of punitive damages and, with specified limitations, recovery of damages for pain and suffering. Also subrogation by insurers is proscribed. None of these restrictions applies generally to tort actions against private entities, thereby further complicating any action involving both public and private defendants.

It sounds quite simple in theory to join the city as defendant seeks to do. In practice it becomes quite difficult because of the differing standards of negligence and comparative negligence (or contributory negligence if the accident happened before August 22, 1973, the date when *N. J. S. A.* 2A:15–5.1 became effective). The jury must determine the facts in one aspect of the case; the judge must determine them in the other. True, *R.* 4:35–2 permits an advisory jury, but to use one would flout the expressed intent of the Legislature that no jury trials be held in *Title* 59 cases. Moreover, the jury, if it were the same jury which tried the primary case, must of necessity be charged on two differing concepts of comparative negligence in the same case, an obvious invitation to error. Further, the trial judge may well either have to hear the case over again or put the parties to the expense of a transcript, since he would be called upon to render a verdict only in the event of a verdict for plaintiff in the primary suit.

It is significant that no original wrongdoing on the part of the city was charged by plaintiff or, indeed, by defendant. A practice has become increasingly frequent over the past few years where governmental agencies have been joined as third-party defendants, particularly in automobile negligence actions whenever the ingenuity of counsel has been able to devise a theory to support such facts as might be gleaned from a given situation. Obviously, the more defendants that can be corralled into a given situation the greater the chance of contribution from each defendant, thus lightening the

load upon original defendants. Thus, municipalities have been sought unsuccessfully to be held liable for failure, or alleged failure, to provide supervision in a *passive* recreation area, *Fahey v. Jersey City,* 52 *N. J.* 103 (1968); invalid designation of one-way streets allegedly causing economic losses to plaintiff, *Visidor Corp. v. Cliffside Park,* 48 *N. J.* 214 (1966); failure to install a traffic light at an intersection, *Hoy v. Capelli,* 48 *N. J.* 81 (1966); failure to timely clear a municipal parking lot of snow, *Amelchenko v. Freehold,* 42 *N. J.* 541 (1969), and the negligence of a building inspector, *Fiduccia v. Summit Hill Const. Co.,* 109 *N. J. Super.* 249 (Cty. D. Ct. 1970); and for damages caused by a valid adoption of a zoning ordinance, *Veling v. Ramsey,* 94 *N. J. Super.* 459 (App. Div. 1967), to name but a few cases. The scheme of the statute is designed to discourage this practice. The courts should not nullify the legislative intent unless no other alternative exists. *R.* 4:8, salutary as it is, is not a device for such frustration.

It is true that *N. J. S. A.* 59:9–3 provides for situations where a governmental agency is a joint tortfeasor. The thrust of this section, however, is to regulate the manner of the division of damages between governmental and nongovernmental joint tortfeasors, See 1972 comment to *N. J. S. A.* 59:9–3. The statute is silent as to the procedure to be invoked to adjudicate whether or not the parties are joint tortfeasors. It may well be that either legislation or a new court rule is required to fill the gap, but in view of the procedural problems set forth herein, joinder of a governmental entity as an additional defendant, particularly as an afterthought, as in this case, would neither solve the problem nor contribute to the administration of justice.

■ It is the responsibility of the court in construing a statute to determine what the Legislature intended rather than to apply a meaning which merely appears fairer as the particular statute is used in practice. If the statute works inequitably, it is up to the Legislature to correct the difficulty.

*Matawan v. Monmouth County Tax Bd.*, 51 *N. J.* 291, 298 (1968).

The motion of defendant to rehear the question of whether the public entity here involved may be joined is denied.